IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00358-MR-WCM

| | |
|---|---|
| STEVIE JUSTUS HOLLAND, | ) |
| Plaintiff, | ) |
| v. | ) MEMORANDUM AND<br>) RECOMMENDATION |
| COMMISSIONER OF THE SOCIAL<br>SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 13, 16), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Procedural Background

In April 2019, Plaintiff Stevie Justus Holland ("Plaintiff") filed applications for disability insurance benefits and supplemental security income. Transcript of the Administrative Record ("AR") 231-237; 238-246. Plaintiff alleges disability beginning on April 1, 2018.

On March 2, 2021, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 12-44. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease, carpal tunnel syndrome, fibromyalgia, obesity, history of asthma, affective disorder, anxiety disorder, and PTSD." AR 17. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except the claimant could occasionally climb ramps and stairs, never climb ladders/ropes/scaffolds, frequently stoop and crouch, and occasionally kneel and crawl. She could do frequent handling and fingering with the right upper extremity. She could have no concentrated exposure to pulmonary irritants or hazards, such as unprotected heights or dangerous moving machinery. She can sustain concentration, persistence, and pace for periods of two hours at a time with simple, routine, repetitive tasks. She can have no customer service interaction with the public and she could not perform jobs that involve working in close coordination with coworkers, and therefore, she could only perform work requiring no more than occasional interaction with coworkers and supervisors. She can perform low-stress work defined as occasional decision-making and occasional changes in the work setting.

AR 26.

Applying this RFC, the ALJ found that from April 1, 2018 through the date of his decision, Plaintiff had the ability to perform certain jobs that existed

2

in significant numbers in the national economy such that Plaintiff was not disabled. AR 38.

## III. Plaintiff's Allegations of Error

Plaintiff argues that the RFC did not properly account for her moderate limitations in concentrating, persisting, or maintaining pace. Additionally, Plaintiff contends that this matter should be remanded because the provision related to the Commissioner's removal is unconstitutional.

## IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial

evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Concentration, Persistence, or Pace

Here, the ALJ found that Plaintiff was moderately impaired with respect to her ability to sustain concentration, persistence, or pace, and included certain non-exertional limitations in the RFC; specifically, that Plaintiff could "sustain concentration, persistence, and pace for periods of two hours at a time with simple, routine, repetitive tasks," with occasional interaction with coworkers, no customer service interaction, and that Plaintiff could work in a low-stress setting. AR 25, 26.

Plaintiff contends that the ALJ erred by failing to "consider and explain the impact of the Plaintiff's mental limitations on her ability to engage in

4

sustained work activity." Doc. 14 at 24; see also Doc. 14 at 21 (asserting that the ALJ was obliged to take into account Plaintiff's moderate limitations in concentration, persistence, and pace).

An ALJ who finds a plaintiff has moderate limitations in concentration, persistence, or pace is not automatically required to include a corresponding limitation in the RFC. See Shinaberry v. Saul, 952 F.3d 113, 121 (4th Cir. 2020); Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). Rather, the ALJ has two options. The ALJ may either (1) include additional limitations in the claimant's RFC to account adequately for the particular mental limitations, or, in the alternative, (2) explain the decision not to limit Plaintiff's RFC further. Shinaberry, 952 F.3d at 121 (explaining that Mascio did not impose a categorical rule requiring a specific RFC regarding concentration, persistence, or pace and stating that an ALJ could explain why such a limitation was not necessary); Rivera v. Berryhill, No. 3:17-CV-00376-GCM, 2019 WL 355536, at *2 (W.D.N.C. Jan. 29, 2019).

Accordingly, the question presented here is whether the ALJ explained adequately how Plaintiff's RFC accounts for Plaintiff's moderate limitations in concentration, persistence, or pace. Compare Davis v. Saul, No. 3:18-CV-00367-MR, 2019 WL 4233553, at *3 (W.D.N.C. Sept. 5, 2019) ("an RFC limited to simple, routine tasks or unskilled work in a low stress or non-production environment, without more,…fails to adequately account for moderate

5

limitations in concentration, persistence, and pace"); Chesterfield v. Saul, 1:19-cv-00090-MR, 2020 WL 249453 (W.D.N.C. Jan. 15, 2020) (finding RFC that limited claimant to working with "things rather than people" in a "low stress, low production environment" where claimant worked with "coworkers and supervisors on an occasional basis" failed to account for claimant's moderate limitations in concentration, persistence, or pace) with Sizemore v. Colvin, No. 5:15-cv-53-MOC, 2016 WL 483140 (W.D.N.C. Feb. 2, 2016), aff'd., 878 F.3d 72 (4th Cir. 2017) (RFC that limited plaintiff to "work in low stress defined as non-production jobs, no fast-paced work like assembly-line; with no public contact," which was adequately supported by the ALJ's discussion of medical and opinion evidence, appropriately addressed plaintiff's ability to stay on task).

Here, when developing Plaintiff's RFC, the ALJ acknowledged that from at least May 2018 through October 2020, Plaintiff sought formal mental health care, but also noted that this care had been conservative, and explained that because Plaintiff's records indicated she had "difficulty with handling situational stressors," restrictions concerning work in stressful situations were included in Plaintiff's RFC. AR 29, 30. In support of his conclusions, the ALJ cited treatment records reflecting Plaintiff's generally normal mental status exams and her attempts to look for work, that Plaintiff's anxiety appeared to be based on situational stressors, and that Plaintiff's psychological symptoms

were mitigated by medication. AR 30 (citing AR 566-567 (May 2018 exam reflecting Plaintiff was alert, oriented, and cognitively intact despite losing her job and filing for divorce); AR 569-570 (August 2018 treatment note reflecting that Plaintiff reported she was doing very well and planned to look for work); AR 572-573 (January 2019 treatment record indicating that Plaintiff was tearful because she had been unable to find work, but was alert and oriented and wanted to increase the dosage of her medication); AR 575-577 (March 2019 indicating that Plaintiff complained of anxiety, but that Plaintiff's mental symptoms were mitigated by medication, and that although Plaintiff was anxious, her mental status exam was largely normal, including normal memory, attention, concentration, insight, and judgment); AR 659-660 (September 2019 treatment note indicating that Plaintiff was enduring situational stress due to house foreclosure but that her symptoms were mitigated by medication and her mental status exam was generally within normal limits); AR 1027-1028 (February 2020 treatment record indicating that Plaintiff complained of situational stressors and excessive worry but her cognitive function, attention, and concentration were within normal limits)).[1]

---

[1] The ALJ also recognized that certain of Plaintiff's mental health records reflected "fair" short-term memory and excessive worry, but otherwise normal mental status exams. AR 31 (citing AR 1040-1041 (June 2020 treatment record), AR 1044-1045 (July 2020 treatment record). AR 1048-1049 (October 2020 treatment record).

7

The ALJ also found persuasive a state agency psychological consultant's determination that Plaintiff could maintain the level of concentration and attention required to perform simple, routine, repetitive tasks. AR 34 (citing AR 124-132). An ALJ may appropriately rely on such evidence when considering a claimant's ability to concentrate, persist, or maintain pace. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021) ("The ALJ's reliance on the opinion of the state agency medical consultant that [plaintiff] could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to support the RFC limitations"); accord Del Vecchio v. Colvin, No. 1:14cv116-RLV, 2015 WL 5023857, at *6 (W.D.N.C. Aug. 25, 2015) (ALJ's explicit reliance on non-examining state agency consultant's mental functional capacity assessment adequately explained "why Plaintiff's limitations in concentration, persistence, or pace did not translate into any additional restrictions….").

Based on the ALJ's discussion of Plaintiff's mental health records, as well as the ALJ's reliance on the state agency consultant's opinion, the undersigned is persuaded that the ALJ appropriately considered and accounted for Plaintiff's ability to sustain concentration, persistence, or pace when developing Plaintiff's RFC. See Buckner v. Saul, No. 1:20-cv-00002-FDW, 2021 WL 467204, at *5 (W.D.N.C. Feb. 9, 2021) ("The ALJ limited Plaintiff to an RFC of 'simple, routine, and repetitive tasks' for two-hour segments at a

time which directly accounts for his limitations in concentration, persistence, and pace"); Funderburk v. Saul, No. 3:20-cv-00334-FDW, 2021 WL 1721871, at *5 (W.D.N.C. April 30, 2021) ("Ultimately the ALJ here adequately 'explained why the psychological evidence and [Plaintiff's] statements support a mental limitation to "simple, routine" tasks with "only occasional decision making and occasional changes to [Plaintiff's] work duties."'") (quoting Shinaberry, 952 F.3d at 122)); Beasley v. Berryhill, No. 1:17-CV-00294-RJC, 2019 WL 1330928, at *5 (W.D.N.C. Mar. 25, 2019) ("Because the ALJ's limitation of two-hour work segments addressed the moderate CPP limitations, the Court does not find reversible error in the ALJ's failure to address Plaintiff's ability to complete a full workday"); Scott v. Berryhill, 1:16cv48, 2017 WL 500000, at *8 (M.D.N.C. Feb. 7, 2017) (finding ALJ accounted adequately for plaintiff's moderate difficulties in concentration, persistence, or pace when ALJ expressly found in the RFC that "despite moderate limitation in CPP, Plaintiff retained the ability to 'maintain [CPP] to stay on task for 2-hour periods over the course of a typical 8-hour workday in order to perform'" specific, identified types of tasks).[2]

---

[2] Plaintiff also argues, in a single paragraph, that the ALJ erred in determining that her headaches were not a severe impairment. See Doc. 14 at 24. However, Plaintiff does not cite any medical records or opinion evidence to support her argument, and instead relies solely on her hearing testimony. Without more, it is not apparent that the ALJ erred in considering whether Plaintiff's headaches were a severe impairment, or that Plaintiff's RFC fails to account adequately for any functional limitations stemming from Plaintiff's headaches. See AR 19 ("The residual functional capacity contains adequate exertional, postural, environmental, and mental restrictions that would cover any symptoms associates with headache…."); see also

## B. Plaintiff's Constitutional Challenge

42 U.S.C. § 902(a)(3) provides that "[a]n individual serving in the office of Commissioner [of the Social Security Administration] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."

Citing Collins v. Yellen, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021), and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020), Plaintiff argues that the structure of the Social Security Administration is constitutionally invalid and therefore the ALJ's decision is void because it was not reviewable by anyone subject to removal at-will by the President. Doc. 14 at 15-17; see also 2021 WL 2981542 (Office of Legal Counsel Memorandum Opinion which concluded that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is unenforceable).

However, arguments of this nature have been rejected by numerous courts. See e.g., Murray v. Kijakazi, No. 3:21-cv-489-MOC, 2022 WL 2252603, at *5 n. 1 (W.D.N.C. June 22, 2022) (explaining that "[t]his Court and many others have repeatedly rejected Social Security plaintiffs' claims that ALJ's decisions are constitutionally defective based on a separation of powers

---

20 C.F.R. 404.1505; 416.905; Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) (it is the claimant's burden to establish that he suffers from an impairment which limits his functional capacity).

10

Case 1:21-cv-00358-MR-WCM    Document 19    Filed 01/26/23    Page 10 of 13

argument," collecting cases, and stating that "the Court is not aware of any case holding to the contrary….") (emphasis in Murray); Osborne v. Kijakazi, 5:21-cv-9-MOC, 2021 WL 5890668, at *3 (W.N.D.C. Dec. 13, 2021) ("The Collins Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the ... method of appointment' and that 'the unlawfulness of [a] removal provision' does not strip [an official] of the power to undertake the other responsibilities of his office[.]'"); Chuenanan v. Commissioner of Social Security, No. 1:21-cv-00086-RJC, 2022 WL 1416421 (W.D.N.C. May 4, 2022); Watkins v. Kijakazi, 1:20-cv-00380-MR-WCM, 2022 WL 1101760 (W.D.N.C. Jan. 21, 2022), recommendation adopted, 2022 WL 822166 (W.D.N.C. March 18, 2022); see also Helms v. Commissioner of Social Security, No. 3:20-cv-589-MOC, 2021 WL 5710096, at *2 (W.D.N.C. Dec. 1, 2021) ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or any other aspect of the administrative litigation in a material way"); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *11 (M.D.N.C. Dec. 9, 2021), recommendation adopted, (M.D.N.C. Jan. 5, 2022) ("Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional…the unconstitutional removal provision at issue here did not impact then-Commissioner Saul's ability to

11

Case 1:21-cv-00358-MR-WCM    Document 19    Filed 01/26/23    Page 11 of 13

carry out the duties of his office") (internal citations omitted); <u>Brand v. Kijakazi</u>, 575 F.Supp.3d 1265, 1274 (D. Nev. Dec. 10, 2021) (rejecting plaintiff's argument that President Biden's statements regarding Saul's firing evidenced a "strong possibility" of harm as "too conclusory, speculative, and attenuated").

## VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 13) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 16) be **GRANTED.**

Signed: January 25, 2023

W. Carleton Metcalf
United States Magistrate Judge

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).